1  **WINSTON & STRAWN LLP**
RANDY ROGERS (S.B. NO. 95993)
2  101 California Street
San Francisco, CA 94111-5894
3  Telephone: (415) 591-1000
Facsimile: (415) 591-1400
4  Email: rrogers@winston.com

5  JUSTIN E. RAWLINS (S.B. NO. 209915)
333 South Grand Avenue, 38th Floor
6  Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
7  Facsimile: (213) 615-1750
Email: jrawlins@winston.com

Attorneys for Wells Fargo Bank, N.A.

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| In re: | Case No. 2:10-bk-25276-BB |
|---|---|
| PHILLIPS CATTLE COMPANY, INC., | Chapter 11 |
| Debtor. | **WELLS FARGO BANK, N.A.'S STATEMENT REGARDING DEBTOR'S EMERGENCY MOTION TO APPROVE USE OF CASH COLLATERAL; AND REQUEST FOR BRIEFING SCHEDULE ON ANTICIPATED MOTION FOR RELIEF FROM STAY** |
| | Date: August 4, 2010
Time: 10:00 a.m.
Place: Courtroom 1475
Edward R. Roybal Federal Building
255 E. Temple Street
Los Angeles, CA 90012 |

Wells Fargo Bank, N.A. ("Wells Fargo") respectfully states as follows in response to the Debtor's Emergency Motion to Approve Use of Cash Collateral (the "Motion"):

**I.**

**INTRODUCTION**

1. The Debtor filed its bankruptcy petition over three months ago. At that time, Wells Fargo believed that the Debtor had not filed bankruptcy the case to maximize value, but instead filed bankruptcy to extend business relationships with the many insiders that transact business with the Debtor. Regardless of the Debtor's reasons for filing, however, Wells Fargo has attempted to make the best of the situation, gather information from the Debtor[1], and engage in fruitful discussions with the Debtor to determine how to consensually resolve the case. Unfortunately, those discussions have broken down.

2. Wells Fargo is now left with a dilemma. The Debtor's operations have not improved and continued operations will serve only to diminish Wells Fargo's collateral position (and benefit primarily insiders with whom the Debtor transacts business), but continued operations (at least with regard to feeding cattle) are necessary for at least some period pending Wells Fargo obtaining relief from stay. In addition, the Debtor cannot meet <u>its burden</u> that it can provide adequate protection.

3. Wells Fargo thus requests that the Debtor's further use of cash collateral be limited to a brief, no more than six week period in accordance with an acceptable budget substantially similar to the monthly budget for August and September proposed by the Debtors, but expanded to a weekly budget, attached as Exhibit A (the "Budget") and requests that the Debtor turn over all excess cash pending a hearing on the anticipated relief from stay motion. In addition, Wells Fargo requests that the Court set a briefing schedule for the anticipated motion for relief from stay in order to minimize further loss and delay.

---

[1] Wells Fargo's attempts to gather information from the debtor have been partially successful, but Wells Fargo still requires further information including further detail with regard to the cattle held and the approximate weight of the cattle.

1

## II.

## BACKGROUND

### A. Wells Fargo's Security Interest

4. On or about October 18, 2007, Wells Fargo agreed to refinance an existing line of credit and finance Debtor's customer cattle, and the Debtor agreed to borrow, up to $21 million under two revolving lines of credit of $10 million and $11 million. Those agreements are memorialized under a Letter Agreement dated October 18, 2007, an amendment to the Letter Agreement dated October 20, 2008 (extending the maturity date to November 1, 2009), and a second amendment to the Letter Agreement dated October 27, 2009 (extending the maturity date to November 1, 2010) (collectively, as amended, restated or otherwise modified, the "Wells Fargo Loan Agreement"). A copy of the Wells Fargo Loan Agreement is attached to the Declaration of Ron Hart in support of this statement (the "Hart Declaration") as Exhibit A. In connection with the second amendment to the Letter Agreement, Wells Fargo also agreed to loan, and the Debtor agreed to borrow, up to an additional $1 million in a revolving line of credit. Further in connection with the second amendment to the Letter Agreement, the Debtor delivered two Revolving Line of Credit Notes dated October 27, 2009 to replace the prior notes and a third Revolving Line of Credit Note dated October 27, 2009 with respect to the additional $1 million loan (collectively, the "Wells Fargo Notes"). Each Wells Fargo Note has a maturity date of November 1, 2010. Copies of the Wells Fargo Notes are attached to the Hart Declaration as Exhibit B.

5. Wells Fargo's security interest in the loans is evidenced by that certain Security Agreement (Livestock) dated October 26, 1998 (the "Security Agreement"), under which the Debtor granted Wells Fargo a security interest in all livestock, feed, supplies, medicines, animal products and other farm products, now or any time thereafter, and prior to the termination thereof, owned or acquired by the Debtor, wherever located, whether in the possession of the Debtor or any other person and whether located on the Debtor's property or elsewhere, and all products and natural increase thereof and all replacements and additional

thereto, together with whatever is receivable or received when any of the collateral or proceeds thereof are sold, leased, collected, exchanged or otherwise disposed of, whether such disposition is voluntary or involuntary, including without limitation, (a) all accounts, contract rights, chattel paper, instruments, documents, general intangibles and rights to payment of every kind now or at any time hereafter arising from any such sale, lease, collection, exchange or other disposition of any of the foregoing, (b) all rights to payment, including returned premiums, with respect to any insurance relating to any of the foregoing, and (c) all right to payments with respect to any cause of action affecting or relating to any of the foregoing (the "Collateral").  A copy of the Security Agreement is attached to the Hart Declaration as Exhibit C.

6. The Wells Fargo loans were also guaranteed by Philip E. Bauer, as Trustee of the Phillip Himmelfarb Testamentary Trust U/T/D 4/9/97, under that certain Continuing Guaranty dated March 21, 2007.  A copy of the Guaranty is attached to the Hart Declaration as Exhibit D.

7. All of the Debtor's cash was held in Wells Fargo accounts on the Petition Date (defined below).  As such, the Collateral includes all of the Debtor's cash collateral as defined in section 363(a) of the Bankruptcy Code (the "Cash Collateral").

8. Wells Fargo perfected its liens by filing a UCC financing statements.  The documents are attached to the Hart Declaration as Exhibit E.   The Debtor does not contest this.  See Declaration of Philip E. Bauer in Support of Motion ¶ 9 ("The Wells Fargo Notes are secured by a lien on the Debtor's livestock, accounts receivable, and inventory under a security agreement and livestock security agreement.").

9. According to the Debtor's schedules, the Debtor owed Wells Fargo approximately $19.835 million on the Petition Date.  See Schedule D [Docket No. 75].

**B.    The Debtor's Bankruptcy Case**

10. On April 20, 2010 (the "Petition Date"), the Debtor filed its voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

3

11. According to the Debtor, Wells Fargo is woefully undersecured. <u>See</u> Declaration of Philip E. Bauer in Support of Motion ¶ 6 ("The Debtor currently has assets of approximately $8 million, which consists primarily of receivables, inventory, and cash on hand. The Debtor currently has liabilities of approximately $19.8 million, which consists primarily of notes payable to Wells Fargo Bank.").[2]

12. Regardless, the Debtor has sought use of cash collateral and, since the Petition Date, Wells Fargo has agreed to use of cash collateral to allow the Debtor enough time to propose a long term solution or agree to an organized liquidation process. On April 21, 2010, the Debtor filed the Motion. The next day, the Court authorized the Debtor to use cash collateral in accordance with a 15-day budget (the "Interim Budget") agreed to by Wells Fargo. <u>See</u> Interim Order Authorizing Use of Cash Collateral [Docket No. 30]. Since then, Wells Fargo has entered into four stipulations consenting to further use of cash collateral, each of which has been approved by the Court. <u>See</u> Docket Nos. 46, 61, 67, and 74. The budget under those stipulations runs through August 4, 2010.

13. To date, the Debtor and Wells Fargo have not been able to agree to any liquidation or restructuring proposal.

### III.

### ARGUMENT

**A.  Wells Fargo Consents to Further Use of Cash Collateral on the Terms Set Forth Hearing; the Debtor May Not Use Cash Collateral Without Wells Fargo's Consent Unless It Shows that Wells Fargo is Adequately Protected**

14. Wells Fargo does not consent to the Debtor's use of Cash Collateral except for up to a six week period (in accordance with the proposed Budget and on the terms of the most recent interim cash collateral order) pending a hearing on a motion for relief from stay.

---

[2] In addition to Wells Fargo holding the lion's share of the debt, Wells Fargo is apparently one of only a few non-insider creditors. Wells Fargo was recently informed by the Debtor that significantly all of the Debtor's unsecured creditors are in fact insiders of the Debtor and that the Debtor plans to update its schedules to indicate which such creditors are insiders as it is presently unclear.

4

In addition, Wells Fargo's consent is conditioned on the Debtor paying Wells Fargo all cash in excess of the cash necessary under the Budget.

15. Under section 363 of the Bankruptcy Code, the Debtor may not use Wells Fargo's Cash Collateral without Wells Fargo's consent unless the Debtor meets its burden and shows that Wells Fargo is adequately protected. Unless the Debtor can provide adequate protection, Wells Fargo's consent is necessary under Section 363 of the Bankruptcy Code because it holds a perfected security interest and liens on the Collateral, including the cash held as of the Petition Date (all of which was in Wells Fargo accounts) and the cash proceeds from accounts receivable collections and cattle sales. Further, any cash generated from the Debtor's assets since the Petition Date constitutes Wells Fargo's Cash Collateral. 11 U.S.C. § 552(b).

16. Section 363(c)(2) of the Bankruptcy Code provides:

> The [debtor in possession] may not use, sell or lease cash collateral under paragraph (1) of this subsection unless —
>
> (A) each entity that has an interest in such cash collateral consents; or
>
> (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).

17. Section 363(e) requires adequate protection upon request of any entity that has an interest in the property used, sold or leased. See 11 U.S.C. § 363(e) ("at any time . . . the court, with or without a hearing, shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest."); Reisner v. Dayton Country Club Co. (In re Magness), 972 F.2d 689 (6th Cir. 1992); In re Heatron, 6 B.R. 493, 495 (Bankr. W.D. Mo. 1980).

18. The Debtor has the burden of proof on the issue of adequate protection. 11 U.S.C. § 363(p) ("the [debtor in possession] has the burden of proof on the issue of adequate protection"); In re Las Torres Development, LLC, 413 B.R. 687, 689 (Bankr. S.D. Tex. 2009) ("Section 363(p) sets forth that the Debtors have the burden of proof to show that the Lender is

1 adequately protected."); In re Swedeland Dev. Group, 16 F.3d 552, 564 (3d Cir. 1994); see also 3 Collier on Bankruptcy § 363.06.

19. Further, in the case of cash collateral because cash is the highest, best, and most secure form of collateral but also easily dissipated, "the Debtors' standard [of adequate protection] in cash collateral cases is a high one." First Bank of Miller v. Wieseler, 45 B.R. 871, 876 (D.S.D. 1985); see also In re Berens, 41 B.R. 524, 527 (Bankr. D. Minn. 1984) ("if the debtor is allowed to use the cash collateral the creditors' security – the collateral – is gone"); In re R.H. Williams, 61 B.R. 567, 575 (Bankr. N.D. Tex. 1986) ("Once cash collateral has been dissipated and spent, court-fashioned sanctions such as retroactive adequate protection, appointment of a Chapter 11 trustee or prohibitions against the further use of cash collateral can be hollow victories for a secured creditor and do not rise to the level of a remedy.").

20. Under section 361 of the Bankruptcy Code, adequate protection may be provided by:

> (1) requiring the [debtor in possession] to make a cash payment or periodic cash payments to such entity, to the extent that the . . . use, sale or lease under Section 363 of this title . . . results in a decrease of such entity's interest in such property;
>
> (2) providing to such entity an additional or replacement lien to the extent such . . . use, sale [or] lease . . . results in a decrease in the value of such entity's interest in such property; or
>
> (3) grant such other relief, other than entitling such entity to compensation allowable under Section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

21. The Debtor cannot provide adequate protection here for a number of reasons.

22. First, the Debtor cannot provide additional or replacement liens and/or provide the Wells Fargo with the indubitable equivalent of its interest in the property, when Wells Fargo already holds a lien on all of the Debtor's assets.

6

23.     Second, Wells Fargo's collateral position (based upon the Debtor's own budgets and actual cash flow reports, which show continued losses) has been and will continue to decline. In fact, <u>the Debtor's own monthly budget (which is attached as Exhibit A) acknowledges negative income for June and projects negative income for July and August.</u> Actual performance and projections show that cash collateral use should not be granted absent Wells Fargo's consent in this circumstance because Wells Fargo can not be adequately protected. <u>See</u> <u>In re Timbers of Inwood Forest Association</u>, 808 F.2d 363, 378 (5th Cir. 1987) ("Secured creditors should not be deprived of the benefit of their bargain.") (citing H.R. Rep. No. 95-595 at 339 (1978)); <u>In re Swedeland Dev. Group, Inc.</u>, 16 F.3d 552, 564 (3d Cir. 1994) (adequate protection must provide the same level of protection negotiated prepetition); <u>In re Phoenix Steel Corp.</u>, 39 B.R. 218, 224 (D. Del. 1984) (adequate protection does not envision stripping secured creditor of the benefit of its bargain).

24.     Finally, the Debtor cannot generate the volume of cattle necessary to service even a penny of debt. In fact, Wells Fargo has been informed by the Debtor that the Debtor will need thousands more cattle in order to even come close to breaking even, <u>excluding servicing any debt owed Wells Fargo</u>. Accordingly, based upon the costs of operations versus the total number of cattle on hand, the Debtor's current assets are likely only to decline in value over the course of the case.

25.     The Debtor's financial performance and the likely continued decline in the overall value of collateral should be decisive. <u>See</u> <u>In re Kaplan Breslaw Ash LLC</u>, 264 B.R. 309, 333 (Bankr. S.D. N.Y. 2001) (recognizing that "a decline in the value of the secured creditor's interest 'is almost decisive in determining the need for adequate protection,'" and that such decline in value may be either "quantitative" or "qualitative" form) (emphasis added); <u>In re Markos Gurnee P'ship</u>, 252 B.R. 712, 716 (Bankr. N.D. Ill. 1997) (recognizing that adequate protection is meant to ensure that a secured creditor does not suffer a loss in the value of its collateral pending the outcome of a bankruptcy case); <u>In re Sharon Steel Corp.</u>, 159 B.R. 165, 169 (Bankr. W.D. Pa. 1993) (denying use of cash collateral because "[w]hile the present value of

7

a debtor's assets may be sufficient to constitute adequate protection, a debtor's future operational plans may result in a rapid deterioration of the collateral. Where an equity cushion is insufficient in size or likely to erode, it cannot, standing alone, constitute adequate protection") (citation omitted); In re American Sweetners, Inc., 2000 WL 1010582 at *4 (Bankr. E.D. Pa. July 14, 2000) ("I reject Debtor's notion that it is entitled to use cash collateral without regard to the Debtor's business operations so long as an equity cushion provides adequate protection of MCP's collateral") (emphasis added). Regardless of what is said now, the Debtor's past projected declines show that continued operations here are simply too risky. See generally, In re Mosello, 195 B.R. 277, 287-90 (Bankr. S.D. N.Y. 1996) (denying debtor's post-petition financing motion because the development project was simply too uncertain and risky to find adequate protection existed).

26. Based upon the foregoing, Wells Fargo cannot be adequately compensated and further cash collateral use should be granted only on an interim basis pending Wells Fargo's motion for relief from stay. In addition, the Debtor's should be required to pay over all cash in excess of the budget as such cash is not necessary to the Debtor's operations. The Debtor is holding more than $2.5 million of cash and is collecting further cash on account of receivables collections and cattle sales. Allowing the Debtor to retain cash equal to the total anticipated expenditures under the budgeted period plus cash collected during the period is more than sufficient to ensure that the Debtor has sufficient cash to continue to operate pending a hearing on further use of cash collateral and Wells Fargo's motion for relief from stay.

**B.   The Court Should Limit the Debtor's Authority to Use Cash Collateral to No More Than Six Weeks and Establish A Hearing Date and Briefing Schedule on Wells Fargo's Motion for Relief from Stay**

27. Wells Fargo requests that the Debtor's authority to use cash collateral be limited to no more than six weeks and that a further hearing be set with regard to use of cash collateral beyond that period. In addition,to avoid further hearings, Wells Fargo requests that

8

the Court set the hearing on Wells Fargo's anticipated motion for relief from stay on the same date and establish a briefing schedule with regard to the motion for relief from stay.

## IV.

## CONCLUSION

28. For the reasons set forth above, Wells Fargo respectfully requests that the Court allow further use of cash collateral in accordance with an acceptable budget pending a further hearing on use of cash collateral and Wells Fargo's anticipated motion for relief from stay.

Dated: August 2, 2010

Respectfully submitted,

WINSTON & STRAWN LLP

By:   /s/ Justin E. Rawlins
     Justin E. Rawlins
     Attorneys for Wells Fargo Bank, N.A.

LA:276178.1